OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.


The State ex rel. McEndree v. Consolidation Coal Company et al.
[Cite as State ex rel. McEndree v. Consolidation Coal Co.
(1994),        Ohio St.3d        .]
Workers' compensation -- Partial disability compensation --
     Election of compensation under former R.C. 4123.57 --
     Industrial Commission does not abuse its discretion in
     finding that claimant's requested change of election was
     not supported by "good cause," when.
     (No. 92-2515 -- Submitted November 9, 1993 -- Decided
February 16, 1994.)
     In Mandamus.
     Relator-claimant, Ray E. McEndree,  was injured on
November 3, 1976 while in the course of and arising from his
employment with respondent Consolidation Coal Company.  His
workers' compensation claim was initially allowed for
"[bruised] head, right knee and left shoulder."  There is no
evidence that claimant missed any work as a result of his
injury.
     On September 6, 1977, at age sixty-two, claimant retired.
Approximately two years later, claimant sought compensation for
permanent partial disability under former R.C. 4123.57.
Respondent Industrial Commission found a twenty-five percent
permanent partial disability.  Given the option of receiving
his compensation as impaired earning capacity benefits under
former R.C. 4123.57(A) or permanent partial disability benefits
under former R.C. 4123.57(B), claimant selected the latter.
     In 1983, claimant sought temporary total disability
compensation.  The commission denied the motion, finding that
claimant's condition did not prevent a return to his former
position of employment.  Shortly thereafter, claimant sought an
increase in his percent of permanent partial disability.  The
commission found a ten percent increase and awarded
compensation accordingly.
     On April 12, 1990, claimant's claim was amended to include
"[a]ggravation of right knee, arthritis."  Two weeks later,
claimant moved to change his partial disability election from
R.C. 4123.57(B) benefits to impaired earning capacity
compensation.  In support, claimant submitted a report from

attending physician, Richard B. Phillips, who assessed a thirty percent permanent partial impairment. He also stated that claimant's ability to earn a living was less than it was before the injury. Claimant additionally submitted his affidavit, which described his decreased ability to perform certain physical tasks. He also stated:

"After my injury, I was never able to perform the same jobs that I was doing at the time of the injury and for many years prior thereto. At the time of my injury I was a welder's helper and had to crawl or climb upon, over or around the heavy equipment and after the injury, I answered phone and cleaned up around the shop. I was never able again to do my welding job. I finally stopped working in September of 1977 because I could no longer do my job."

A commission district hearing officer denied claimant's motion, writing:

"The DHO finds that claimant's condition has not progressed to an extent that was not reasonably foreseeable to the claimant at his initial election. A review of the file gives no indication of any unforeseen circumstances and, in fact, shows a regular regimen of conservative care for claimant's problems."

The regional board of review affirmed without comment. Commission staff hearing officers, however, affirmed the district hearing officer's reasoning and added a second basis for denial. Finding that claimant's hearing testimony contradicted his affidavit, the staff hearing officers found:

"* * * that the claimant made his election under former Paragraph B of Section 4123.57 Ohio Revised Code after his retirement. The claimant retired (per his testimony) on 9/6/77 and this was not a disability retirement. The election under paragraph B was made on 9/28/79. Therefore, there are no new or changed circumstances warranting the granting of change election, and the finding and order of the Regional Board be affirmed for the reason that is supported by proof of record and is not contrary to law."

Claimant filed the instant complaint in mandamus to compel the commission to grant relator's motion to change his election.

Larrimer & Larrimer and Craig Aalyson, for relator.

Hanlon, Duff & Paleudis Co., L.P.A., and John G. Paleudis, for respondent Consolidation Coal Company.

Lee I. Fisher, Attorney General, and Merl H. Wayman, Assistant Attorney General, for respondent Industrial Commission.

Per Curiam. Former R.C. 4123.57 permitted a claimant to choose the manner in which to receive partial disability compensation - - as impaired earning capacity compensation under R.C. 4123.57(A) or permanent partial disability benefits under R.C. 4123.57(B). We are once again asked to determine whether the commission abused its discretion in finding that claimant's requested election change was not supported by "good cause." For the reasons to follow, we deny the writ.

"Good cause" required "unforeseen changed circumstances subsequent to the initial election" and "actual impaired earning capacity." State ex rel. Combs v. Goodyear Tire &

Rubber Co. (1992), 62 Ohio St.3d 378, 381, 582 N.E.2d 990, 992. Claimant can demonstrate neither actual impaired earning capacity nor the requisite changed circumstances.

As to his impaired earning capacity, claimant does not challenge the commission's conclusion that he retired for reasons unrelated to his injury. This voluntary retirement does not, in and of itself, foreclose a finding of actual impaired earning capacity. State ex rel. CPC Group v. Indus. Comm. (1990), 53 Ohio St. 3d 209, 559 N.E.2d 1330. However, to maintain compensation eligibility, such a claimant must also demonstrate:

"* * * a desire to earn during the period in which an impairment has been alleged. Receipt of compensation for impaired earning capacity when that desire is absent is inconsistent with Johnson's [State ex rel. Johnson v. Indus. Comm. (1988), 40 Ohio St.3d 384, 533 N.E.2d 775] requirement that a claimant prove actual impaired earning capacity." (Emphasis sic.) Id. at 211-212, 559 N.E.2d at 1333.

Once a claimant meets that burden, he or she must still establish that efforts to secure post-retirement employment have been hampered by injury. The present claimant, however, falls short of even the threshold requirement. He has not alleged that he ever sought other post-retirement work, nor has he asserted any such intent or interest. Under similar facts, we found that an employee who expressed no desire to pursue post-departure work opportunities had no compensable earning impairment, stating:

"* * * appellee removed herself from the labor market for reasons unrelated to her injury, thereby reducing her 'earning capacity' to zero. Appellee's earning capacity could not be impaired by her injury." State ex rel. Pauley v. Indus. Comm. (1990), 53 Ohio St.3d 263, 264-265, 559 N.E.2d 1333, 1335.

Conversely, even if claimant could demonstrate an injury-related earning capacity impairment, he could not persuasively assert that the impairment represented a change in circumstances. Claimant was not working when he initially made the election. He cannot, therefore, allege a post-election inability to work as a changed circumstance. As we held in State ex rel. Simpson v. Indus. Comm. (1991), 62 Ohio St.3d 162, 165, 580 N.E.2d 779, 782:

"* * * appellant was already prevented by his injury from working when he elected to receive R.C. 4123.57(B) compensation. Thus, the circumstances that appellant claims justify an election change were not only foreseeable, but were present when the initial election was made."

Claimant's reference to his subsequently allowed condition and resulting disability increase also does not represent changed circumstances sufficient to merit an election change. In Combs, supra, the post-election allowance of an additional condition was an integral part of our determination that the requisite changed circumstances existed. There, however, claimant's additionally allowed conditions created a sevenfold increase in disability and forced the claimant from his job. The present claimant's additional allowed condition has not had a comparable impact.

In the same vein, we decline to find that claimant's ten percent increase in disability, standing alone, represents a

"significant worsening" of his condition so as to constitute a changed circumstance under Combs.  See State ex rel. Simpson v. Indus. Comm. (1991), 62 Ohio St.3d 162, 580 N.E.2d 779.  Claimant essentially asks us to view "significant worsening" in strictly numerical terms.  We will not adopt such a narrow interpretation, finding that it disserves both claimants and employers.  For example, to the resilient employee who somehow continues to work despite a high degree of disability, a slight five percent disability increase may be all that is needed to finally force this employee from his or her job.  Conversely, a thirty percent increase may have no effect on a different claimant's ability to work.

In this case, without seeing a tangible consequence of claimant's numerically increased disability, we cannot characterize the worsening of his condition as "significant."  For example, in Combs, claimant's jump in disability from five to thirty-five percent was accompanied by a contemporaneous inability to work.  This helped to provide a more definable interpretation to numbers that, standing alone, might have been meaningless.  In this case, claimant does not allege any change as a result of the ten percent disability increase, rendering the significance of the increase suspect.

For these reasons, the writ of mandamus is hereby denied.

Writ denied.

Moyer, C.J., A.W. Sweeney, Wright, Resnick, F.E. Sweeney and Pfeifer, JJ., concur.

Douglas, J., dissents.